[Crim. No. 600. Second Appellate District.—August 2, 1918.]

THE PEOPLE, Respondent, v. HARRY L. EMRICK, Appellant.

CRIMINAL LAW—MURDER—SECOND DEGREE—SELF-DEFENSE—UNJUSTIFI-
ABLE LIFE-TAKING OR USE OF DEADLY WEAPON—INSTRUCTION.—On a trial for murder on which the defendant was convicted of murder in the second degree, there was no error in instructing the jury to the effect that "though the right to take life, or to use a deadly weapon in self-defense, is unquestionable, yet one on whom another is making a mere assault with the fist, not with intent to kill, or to do great bodily harm, and who is not deceived as to its character, is not justified in taking life, or in using a deadly weapon in self-defense," especially where the jury must have plainly understood from other instructions given that the court intended to advise it that even an assault or battery might, under proper circumstances sufficiently defined, furnish justification for the use of a deadly weapon and the killing of the assailant.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order refusing a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Robert M. Clarke and Martin H. Buck, for Appellant.

U. S. Webb, Attorney-General, and Joseph H. Lewinsohn, Deputy Attorney-General, for Respondent.

JAMES, J.—The defendant appeals from a judgment directing his imprisonment after conviction of the crime of murder in the second degree. Appeal is also taken from an order denying a motion for a new trial.

At the time of the alleged homicide defendant was residing at Carpinteria with his wife and stepchildren. On the day of the killing defendant's wife had, in company with the wife of Weiler, the deceased, visited the city of Santa Barbara, a short distance away. Defendant's wife returned home about 6:30 o'clock. Defendant, upon entering the house, engaged in an exchange of angry words with his wife and one of his stepsons, and left the house with a revolver in his possession. Some time thereafter Weiler and his wife came to the defendant's house, Weiler remaining for the most part upon the porch of the house, while his wife held some conversation with Mrs. Emrick. It reasonably appears from the testimony that defendant was somewhat under the influence of liquor at all of the times before mentioned. Later on, and before the shooting occurred, the defendant secured a bottle of whisky. Some of the witnesses testified that when defendant learned that Weiler was there he declared that he intended to kill him. He met Weiler near the main-traveled highway at about the front of the house, Weiler being accompanied by his wife. It also appears that a brother of defendant endeavored to pacify the man. It nowhere appears in the evidence that Weiler was armed, although the brother of the defendant testified that just before the shot was fired he thought he saw something passed by Weiler to the latter's wife, and that he notified the defendant of his belief in that regard. Little question can be made under the evidence but that defendant was at the time intoxicated and was withal threatening and boisterous. He displayed the gun, which he held in his hand, openly. There was some testimony that Weiler addressed him and asked him to put up the gun, telling him that if he wanted to fight, he would fight him that way, but not with a gun. As between Mrs. Weiler and her husband, the former seems to have been more outspoken and active in the part which the Weilers took in the affair. Just before the shot was fired, by the testimony most favorable to the defendant, it would appear that Weiler pulled his wife back and advanced toward the defendant, whereupon the defendant shot and killed him. As we have before noted, we can find no

testimony tending to show in the slightest degree that Weiler on the night in question was armed. After the shooting had occurred blood was seen upon the back of the head and neck of the defendant, and it was claimed that this was caused by the attack of Mrs. Weiler, some of the witnesses expressing the view that defendant was so attacked by Mrs. Weiler before he fired the shot, while the evidence for the prosecution was to the effect that, after her husband had been shot to the ground, Mrs. Weiler made an attack with her hands and fists upon the defendant. No briefs were filed in support of this appeal, but at the oral argument our attention was called to a certain instruction given to the jury, as constituting the chief ground of error claimed. That instruction had to do with the right of self-defense. We may add to the statement of the testimony, that by some of the evidence for the defendant it was said that Mrs. Weiler, when she attacked the defendant, had something "shining" in her hand. The court, among other instructions, gave the following: "The jury are instructed that, though the right to take life, or to use a deadly weapon, in self-defense, is unquestionable, yet one on whom another is making a mere assault with the fist, not with intent to kill, or to do great bodily harm, and who is not deceived as to its character, is not justified in taking life, or in using a deadly weapon in self-defense." It is contended that by this instruction the court advised the jury, first, that an assault with the fist would in no case justify the use of a deadly weapon in repelling such assault, and, second, by the instruction it was intimated to the jury that the only assault made upon the defendant by the Weilers was one with the fist. We do not think that the objection to the instruction is well taken. We find upon examining the charge, in other of its statements, as the court gave it, that the jury was very fully advised as to the right of a person assaulted to repel the assault with force, even to the extent of using a deadly weapon. By instruction 49 the jury was told: "To justify a homicide committed by one in resisting or repelling an assault or battery committed or attempted to be committed upon his person by another, it must appear to the slayer as a reasonable man that the danger threatened, if any, was immediate and sufficient to excite the fears of a reasonable person that he was in danger of receiving death or great bodily harm, and that he acted under the influence of such fears and not in a spirit of

revenge; and it must further appear that the degree of resistance was not clearly disproportionate to the nature of the injury offered or given—that the force used in repelling or resisting the assault or battery was not clearly greater than necessary." Under this instruction the jury must plainly have understood that the court intended to advise it that even an assault or battery might, under proper circumstances, sufficiently defined, furnish justification for the use of a deadly weapon and the killing of the assailant. Instruction 51 enumerated specifically the various conditions under which homicide is justifiable. In our view of the case, the instructions were full and fair and not misleading.

No other alleged error is called to our attention which warrants particular discussion.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.